Theresa A. Goldner, Esq.
KERN COUNTY COUNSEL
Mark Nations, Esq. (S.B. No. 101838)
CHIEF DEPUTY COUNTY COUNSEL
1115 Truxtun Avenue, Fourth Floor
Bakersfield, California 93301
Telephone: (661) 868-3800
Facsimile: (661) 868-3805
Email: mnations@co.kern.ca.us

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP
    Marguerite Mary Leoni, Esq. (S.B. No. 101696)
    Christopher E. Skinnell, Esq. (S.B. No. 227093)
    Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone:  (415) 389-6800
Facsimile:   (415) 388-6874
Email: mleoni@nmgovlaw.com
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com

*Attorneys for Defendants*
COUNTY OF KERN, *ET AL.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR LUNA, *et al.*,<br><br>        *Plaintiffs*,<br><br>vs.<br><br>COUNTY OF KERN, *et al.*,<br><br>        *Defendants*. | Case #1:16-cv-00568-DAD-JLT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [FRCP 12(b)(6)]**<br><br>JUDGE: Hon. Dale A. Drozd<br>COURTROOM: 5<br>HEARING DATE: June 21, 2016<br>TIME: 9:30 a.m. |

<u>**TABLE OF CONTENTS**</u>

**Page**

NOTICE OF MOTION & MOTION ......................................................................................vi

POINTS & AUTHORITIES ................................................................................................1

    I.       INTRODUCTION ...........................................................................................1

    II.      APPLICABLE STANDARD OF REVIEW ....................................................2

    III.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THE THREE MANDATORY PRECONDITIONS TO A VOTE DILUTION CLAIM SET FORTH IN *THORNBURG V. GINGLES*, 478 U.S. 30 (1986) ...........................................................3

          A.    First *Gingles* Precondition: The Only Map That Plaintiffs Identify In Support Of Their Allegations That It Is Possible To Create A Second Majority-Latino Citizen Voting Age Population Supervisorial District In Kern County Would Be Illegal If Adopted, And Is Therefore Inadequate To Carry Plaintiffs' Pleading Burden.........................................................................................3

          B.    Second *Gingles* Precondition: Plaintiffs' Allegations of Latino "Cohesion" Are Purely Conclusory And Misstate What "Cohesion" Is .................................................................8

          C.    Third *Gingles* Precondition: Plaintiffs Allegations of White Bloc Voting That "Usually" Defeats Latino-Preferred Candidates Are Also Entirely Conclusory, And The Only Candidates Identified By The Complaint Are Latino Candidates Who Actually *Won* ................................................12

    IV.    PLAINTIFFS' ALLEGATIONS REGARDING THE TOTALITY OF CIRCUMSTANCES ARE ENTIRELY CONCLUSORY AS WELL ...........................................................................13

    V.      CONCLUSION..............................................................................16

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Ashcroft v. Iqbal,*
5       556 U.S. 662 (2009) ..........................................................................2, 3, 16

6    *Bartlett v. Strickland,*
7       556 U.S. 1 (2009) ...................................................................................1

8    *Bell Atlantic v. Twombly,*
        550 U.S. 544 (2007) .........................................................................2, 16
9

10   *Broward Citizens for Fair Dists v. Broward County,*
        2012 U.S. Dist. LEXIS 46828 (S.D. Fla. Apr. 3, 2012)..........................4, 9, 12
11

12   *Burns v. Richardson,*
        384 U.S. 73 (1966) .................................................................................5
13

     *Bush v. Vera,*
14      517 U.S. 952 (1996) ...............................................................................8

15   *Calvin v. Jefferson Cnty. Bd. of Comm'rs,*
16      2016 U.S. Dist. LEXIS 36121 (N.D. Fla. Mar. 16, 2016)..........................5

17   *Cane v. Worcester County,*
18      840 F. Supp. 1081 (D. Md. 1994), *aff'd,* 35 F.2d 921 (4th Cir. 1994)............11

19   *Cano v. Davis,*
        211 F. Supp. 2d 1208 (C.D. Cal. 2002), *aff'd,* 537 U.S. 1100 (2003).............8, 10, 12, 13
20

21   *Chavez v. United States,*
        683 F.3d 1102 (9th Cir. 2012) ................................................................9
22

23   *Connor v. Finch,*
        431 U.S. 407 (1977) ............................................................................5, 7
24

25   *Daniels-Hall v. Nat'l Educ. Ass'n,*
        629 F.3d 992 (9th Cir. 2010) ..................................................................4

26   *Davidson v. City of Cranston,*
27      42 F. Supp. 3d 325 (D.R.I. 2014) .............................................................5

28

*Essex v. Kobach*,
　874 F. Supp. 2d 1069 (D. Kans. 2012) ................................................................7

*Evenwel v. Abbott*,
　578 U.S. __, 136 S. Ct. 1120 (2016) ...................................................................5

*Fletcher v. Lamone*,
　831 F. Supp. 2d 887 (D. Md. 2011), *aff'd*, 133 S. Ct. 29 (U.S. 2012) .........................5, 9

*Gomez v. City of Watsonville*,
　863 F.2d 1407 (9th Cir. 1988) ........................................................................11

*Growe v. Emison*,
　507 U.S. 25 (1993) ......................................................................................8

*Jeffers v. Tucker*,
　847 F. Supp. 655 (E.D. Ark. 1994) ....................................................................8

*Johnson v. De Grandy*,
　512 U.S. 997 (1994) ...................................................................................13

*League of United Latin Am. Citizens v. Perry*,
　548 U.S. 399 (2006) ....................................................................................7

*Mack v. South Bay Beer Distribs.*,
　798 F.2d 1279 (9th Cir. 1986) .........................................................................3

*Mahan v. Howell*,
　410 U.S. 315 (1973) ....................................................................................5

*MGIC Indem. Corp. v. Weisman*,
　803 F.2d 500 (9th Cir. 1986) ..........................................................................5

*Miller v. Johnson*,
　515 U.S. 900 (1995) ....................................................................................7

*Montes v. City of Yakima*,
　40 F. Supp. 3d 1377 (E.D. Wash. 2014) ..............................................................10

*Mullis v. U.S. Bankruptcy Court*,
　828 F.2d 1385 (9th Cir. 1987) .........................................................................3

*NAACP v. City of Columbia*,
   850 F. Supp. 404 (D.S.C. 1993), *aff'd*, 33 F.3d 52 (4th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 1147 (1994) ................................................................10

*NAACP v. Snyder*,
   879 F. Supp. 2d 662 (E.D. Mich. 2012) .........................................................9

*Neitzke v. Williams*,
   490 U.S. 319 (1989) .....................................................................................2

*Perez v. Pasadena Indep. Sch. Dist.*,
   165 F.3d 368 (5th Cir. 1999) .......................................................................3

*Radogno v. Ill. State Bd. of Elections*,
   836 F. Supp. 2d 759 (N.D. Ill. 2011), *aff'd*, 133 S. Ct. 103 (U.S. 2012) .........................5

*Reed v. Town of Babylon*,
   914 F. Supp. 843 (E.D.N.Y. 1996) ...............................................................7

*Reno v. Bossier Parish Sch. Bd.*,
   520 U.S. 471 (1997) .....................................................................................4

*Rodriguez v. Harris County, Tex.*,
   964 F. Supp. 2d 686 (S.D. Tex. 2013), *aff'd*, 601 Fed. Appx. 255 (5th Cir. 2015)................................................................................................................10

*Rodriguez v. Pataki*,
   308 F. Supp. 2d 346 (S.D.N.Y.), *aff'd*, 543 U.S. 997 (2004).........................11

*Romero v. Pomona*,
   883 F.2d 1418 (9th Cir. 1989) ......................................................................3

*Shirt v. Hazeltine*,
   336 F. Supp. 2d 976 (D.S.D. 2004), *aff'd*, 461 F.3d 1011 (8th Cir. 2006) ....................11

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ...............................................................................*passim*

*Townsend v. Holman Consulting Co.*,
   914 F.2d 1136 (9th Cir. 1990) (en banc) .......................................................3

*United States v. Blaine County*,
   363 F.3d 897 (9th Cir. 2004) ........................................................................8

**Statutes**

Section 2 of the federal Voting Rights Act, 52 U.S.C. § 10301 (formerly 42
    U.S.C. § 1973) ................................................................................................*passim*

**Other Authorities**

74 Ops. Cal. Att'y Gen. 162 (1991) .................................................................5

Fed. R. Civ. Proc. 8 ...............................................................................2, 3, 16

Fed. R. Civ. Proc. 12(b)(6) .................................................................2, 3, 4, 9

Fed. R. Civ. Proc. 12(c) ...............................................................................9

S. Rep. No. 97-417 (1982), *reprinted at* 1982 U.S.C.C.A.N. 177 ...................................14

## **NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Tuesday, June 21, 2016, at 9:30 a.m., or as soon thereafter as the parties may be heard, Defendants COUNTY OF KERN, *et al.*, will move this Court, at the Robert E. Coyle United States Courthouse located at 2500 Tulare Street, Fresno, California, 93721, Courtroom #5 (7th Floor), for an order dismissing the Complaint under Federal Rule of Civil Procedure 12(b)(6), on the ground that the Complaint fails to state a claim upon which relief can be granted.

This motion is based on the following documents: this Notice of Motion and the attached Points & Authorities; the Request for Judicial Notice, filed herewith ("RJN"), and accompanying Declarations of Allan Krauter and Christopher E. Skinnell; and all the other papers, documents, or exhibits on file or to be filed in this action, and the argument to be made at any hearing on the motion ordered by the Court.

This motion is made following the conference of counsel pursuant to Paragraph 1.C of this Court's standing order. Counsel for Defendants Christopher Skinnell, signatory below, sent an e-mail to counsel for Plaintiffs on May 15, 2016, detailing the bases for the proposed motion. Mr. Skinnell then spoke by telephone with Denise Hulett, counsel of record for Plaintiffs on the afternoon of May 16, 2016, further summarizing the bases of the motion. Ms. Hulett indicated that Plaintiffs do not agree with Defendants' position and that they would not agree to dismiss the Complaint under Rule 12(b)(6).

Respectfully submitted,

Dated: May 17, 2016

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP

By:   /s/    Christopher E. Skinnell
        Christopher E. Skinnell

*Attorneys for Defendants*
COUNTY OF KERN, *et al*.

MOTION TO DISMISS [FRCP 12(b)(6)] OF
DEFENDANTS COUNTY OF KERN, *et al*.

CASE NO. 1:16-cv-00568-DAD-JLT
Page vi

**POINTS AND AUTHORITIES**

**I.      INTRODUCTION.**

The Complaint in this case (Dkt. #1) should be dismissed for failure to plead a viable cause of action.

In the seminal case of *Thornburg v. Gingles*, 478 U.S. 30 (1986) ("*Gingles*"), the United States Supreme Court held that to plead a claim for vote dilution under Section 2 of the federal Voting Rights Act, 52 U.S.C. § 10301 (formerly 42 U.S.C. § 1973), the plaintiffs must first establish three preconditions: first, that the minority group in question is sufficiently large and compact to form a majority in a single member district; second, that the minority group is "politically cohesive"; and third, that the majority votes "sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate." *Id.* at 50-51. Though *Gingles* itself articulated these preconditions in the context of a challenge to multi-member districts, these same preconditions have since been held to "apply equally in § 2 cases involving single-member districts, such as a claim alleging vote dilution because a geographically compact minority group has been split between two or more single-member districts," as is the case here. *Bartlett v. Strickland*, 556 U.S. 1, 11 (2009). Failure to establish any of the three *Gingles* preconditions is fatal to a Section 2 claim.

"[O]nly when a party has established the *Gingles* requirements does a court proceed to analyze whether a violation has occurred based on the totality of the circumstances"— whether the challenged map deprives the minority group of an equal opportunity to elect candidates of their choice. *See id.* at 11-12.

The Plaintiffs fail to adequately allege any of the three *Gingles* preconditions, nor do they allege any additional facts bearing on the totality of circumstances. As such, the Complaint should be dismissed.

With respect to the first *Gingles* precondition, a failure to provide the Court with any illustrative map demonstrating the possibility of a viable second majority Latino citizen voting age population ("LCVAP") district that respects traditional districting principles would be enough to warrant dismissal. Plaintiffs do not provide such a map, and their only

concrete attempt to identify such a map is a refererence (in Paragraph 21 of the Complaint) to a hypothetical map submitted to the Board of Supervisors by MALDEF in 2011.

But that that map is inadequate to avoid dismissal as well. For one thing, the map improperly fails to exclude state and federal prisoners (of which there were nearly 30,000 in 2011) from the County's population base. When those prisoners are removed, the map referred to by Plaintiffs has an unconstitutionally large population deviation, exceeding the 10% threshold authorized by Supreme Court case law. Moreover, the configuration of the second majority Latino district in that map is so irregular as to raise questions about its constitutionality; at the very least, it is inadequate to meet *Gingles*' requirement that a "compact" district can be drawn, respecting traditional redistricting principles.

The allegations contained in the Complaint regarding the second and third *Gingles* preconditions—minority political cohesion and majority bloc voting—are nothing more than bare-bones, unadorned, cursory recitations of the elements of a Section 2 claim that do not meet the pleading standards set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). They are exactly the types of allegations that have led to Section 2 complaints being dismissed in other cases, and the same result is warranted here.

And in similar fashion, Plaintiffs' allegations regarding the factors affecting the totality of circumstances amount to nothing more than a rote recitation of the list of considerations that have been identified over the years as relevant to a Section 2 claim (known as the "Senate Factors" due to their derivation from a 1982 U.S. Senate Report), without any factual allegations to support those conclusory assertions.

Simply put, the Complaint on file in this action is so cursory and perfunctory that it does not meet even Rule 8's lenient pleading standards, as articulated in *Iqbal* and *Twombly*. As such, it should be dismissed for failure to state a claim.

## II.   <u>APPLICABLE STANDARD OF REVIEW.</u>

Under Rule 12(b)(6), a motion to dismiss is properly granted if one or more causes of action in the complaint fail to state a claim as a matter of law. *Neitzke v. Williams*, 490

U.S. 319, 327 (1989). In ruling on a motion under Rule 12(b)(6), the Court may consider facts that may be judicially noticed, *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

For a complaint to survive a Rule 12(b)(6) motion, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [Citation.] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 & 557).

## III.   PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THE THREE MANDATORY PRECONDITIONS TO A VOTE DILUTION CLAIM SET FORTH IN *THORNBURG V. GINGLES*, 478 U.S. 30 (1986).

As noted above, a successful challenge to a districting plan under Section 2 of the federal Voting Rights Act requires a plaintiff to plead and prove three critical "preconditions," set forth by the Supreme Court in *Gingles*. Failure to establish any one of these preconditions is fatal to a federal voting rights claim. *Perez v. Pasadena Indep. Sch. Dist.*, 165 F.3d 368, 372 (5th Cir. 1999); *Romero v. Pomona*, 883 F.2d 1418, 1423 (9th Cir. 1989), *abrogated on other grounds, Townsend v. Holman Consulting Co.*, 914 F.2d 1136, 1141 (9th Cir. 1990) (en banc). Plaintiffs have not adequately alleged any of the three *Gingles* preconditions in their Complaint.

### A.   First *Gingles* Precondition: The Only Map That Plaintiffs Identify In Support Of Their Allegations That It Is Possible To Create A Second Majority-Latino Citizen Voting Age Population Supervisorial District In Kern County Would Be Illegal If Adopted, And Is Therefore Inadequate To Carry Plaintiffs' Pleading Burden.

The Supreme Court has held that "[b]ecause the very concept of vote dilution implies—and, indeed, necessitates—the existence of an 'undiluted' practice against which the fact of dilution may be measured, a § 2 plaintiff must also postulate a reasonable

alternative voting practice to serve as the benchmark 'undiluted' voting practice." *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 480 (1997). In *Broward Citizens for Fair Dists v. Broward County*, 2012 U.S. Dist. LEXIS 46828 (S.D. Fla. Apr. 3, 2012) ("*Broward Citizens*"), a federal district court in Florida held that failure to provide the court with an illustrative map, or at least a detailed summary of such a map, warrants dismissal of a Section 2 complaint under Rule 12(b)(6). *Id.* at *18 n.6.

On this score, Paragraph 39 of the Complaint alleges that "[t]he Latino population in Kern County is sufficiently numerous and geographically compact such that two properly apportioned electoral districts can be drawn in which Latinos would constitute a majority of the CVAP," but no illustrative map is provided with the Complaint. Rather, Plaintiffs refer (in Paragraph 21[1]) to a hypothetical map submitted to the Board of Supervisors by MALDEF's National Redistricting Coordinator, Steven Ochoa, in 2011, but they have withheld that map from the Court.[2]

Why have Plaintiffs not provided the Court with the map cited in Paragraph 21? Simply reviewing the map in question reveals the method to their madness. While Plaintiffs have alleged (in Paragraph 21) that the map is "a geographically compact and equipopulous plan," the map itself shows otherwise, on its face. And while the factual allegations of a complaint are generally accepted as true, the Court is "not, however, required to accept as true allegations that contradict . . . matters properly subject to judicial notice." *Daniels-Hall*

---

[1] Paragraph 21 alleges that "[d]uring public hearings, Latino community members submitted a geographically compact and equipopulous plan to Defendant Board of Supervisors that increased the number of districts in which Latinos would constitute a majority of the CVAP from one district to two districts."

[2] Defendants assume for purposes of this motion that this allegation sufficiently references the 2011 MALDEF map. *But see Broward Citizens,* 2012 U.S. Dist. LEXIS 46828, *18 n.6 ("Plaintiffs [sic] mere allegation that '[s]everal alternate maps were presented to the County Commission which would potentially achieve the objectives of the County's redistricting mandate without violating the constitutional rights of the Black and other minority voting population' is conclusory and insufficient to meet Plaintiffs' pleading burden.").

*v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The map in question, having been formally submitted to the Board of Supervisors, is judicially noticeable. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (a court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss); *Radogno v. Ill. State Bd. of Elections*, 836 F. Supp. 2d 759, 772 n.8 (N.D. Ill. 2011) (three-judge court), *aff'd*, 133 S. Ct. 103 (U.S. 2012) (taking judicial notice of redistricting maps). A copy is submitted herewith, as Exhibit B to Defendants' Request for Judicial Notice, filed herewith (hereafter "Defs' RJN").

For one thing, the map is <u>not</u> equipopulous. Its total deviation exceeds 10%, making it presumptively *unconstitutional*. *See Connor v. Finch*, 431 U.S. 407, 417-18 (1977).

At the time of the 2010 Census, Kern County was home to 29,524 inmates of state and federal prisons, who are not eligible to vote. *See* Defs' RJN, Exhibit A, p. 4 & Exhibit D. Following the advice of the California Attorney General, *see* 74 Ops. Cal. Att'y Gen. 162 (1991), Kern County excluded those prisoners from the total population base for evaluating equal population. *See* Defs' RJN, Exhibit G. This was unquestionably a permissible choice,[3] and, in fact, the failure to exclude those prisoners may itself have been a constitutional violation.[4]

––––––––––––––––––––

[3] *Burns v. Richardson*, 384 U.S. 73, 93-94 (1966) (holding that Hawaii could use a registered-voter population base that excluded its substantial temporary military population); *Evenwel v. Abbott*, 578 U.S. __, 136 S. Ct. 1120, 1124 n.3 (2016) (noting that "The Constitutions and statutes of ten States—California, Delaware, Hawaii, Kansas, Maine, Maryland, Nebraska, New Hampshire, New York, and Washington—authorize the removal of certain groups from the total-population apportionment base."); *Fletcher v. Lamone*, 831 F. Supp. 2d 887 (D. Md. 2011), *aff'd*, 133 S. Ct. 29 (U.S. 2012) (Maryland permissibly declined to count prisoners as residents of the prison for redistricting purposes)

[4] *See Mahan v. Howell*, 410 U.S. 315, 331-32 (1973) (counting 36,700 persons who were "home-ported" at the U.S. Naval Station, Norfolk, regardless of where they actually resided, because that is where they were counted on official census tracts, was unconstitutional); *Calvin v. Jefferson Cnty. Bd. of Comm'rs*, 2016 U.S. Dist. LEXIS 36121 (N.D. Fla. Mar. 16, 2016) (failure to exclude prisoners from population base resulted in unconstitutional malapportionment of districts); *Davidson v. City of Cranston*, 42 F. Supp.

The map submitted by MALDEF's National Redistricting Coordinator, however, failed to exclude these prisoners from its population base. *See* Defs' RJN, Exhibit B, p. 2 (MALDEF's demographics), and Exhibit C (letter from MALDEF National Redistricting Coordinator to Kern County Board of Supervisors). Those prisoners are not evenly distributed throughout the County, but are, in fact, predominantly located in MALDEF's proposed District 3. Excluding them results in the removal of 2,614 prisoners from MALDEF's proposed District 1;[5] 8,735 prisoners from proposed District 2;[6] and 18,175 prisoners from proposed District 3.[7] (Proposed Districts 4 and 5 remain unaffected.)

The ideal population of a supervisorial district under this prison-adjusted population base is 162,021 persons. *See* Defs' RJN, Exhibit A, p. 5 & Exhibit E, pp. 1, 6-7, 9, 11 and 14. Adjusting the total population numbers produced by MALDEF at the time, the actual population numbers, excluding ineligible prisoners, are as follows:

---

3d 325 (D.R.I. 2014) (denying motion to dismiss claim that failure to exclude prisoners from population base violated equal protection).

[5] The California City Correctional Facility, located at 22844 Virginia Blvd., California City, CA 93504. *See* Defs' RJN, Exhibits C, H and I.

[6] The Taft Federal Correctional Facility, located at 1500 Cadet Rd., Taft, CA 93268; the California Correctional Institution, located at 24900 Highway 202, Tehachapi, CA 93561; and the Taft Modified Community Correctional Facility, located at 330 Commerce Wy., Taft, CA 93268. *See* Defs' RJN, Exhibits C and H-K.

[7] The North Kern State Prison, located at 2737 W. Cecil Ave., Delano, CA 93215; the Kern Valley State Prison, located at 3000 W. Cecil Ave., Delano, CA 93215; the Wasco State Prison, located at 701 Scofield Ave., Wasco, CA 93280; the Golden State Modified Community Correctional Facility, located at 611 Frontage Rd., McFarland, CA 93250; the Delano Modified Community Correctional Facility, located at 2727 W. Industry Wy., Delano, CA 93215; the Central Valley Modified Community Correctional Facility, located at 245 Taylor Ave., McFarland, CA 93250; the McFarland Female Community Reentry Facility, located at 120 Taylor Ave., McFarland, CA 93250; and the Shafter Modified Community Correction Facility, 1150 E. Ash Ave., Shafter, CA 93263. *See* Defs' RJN, Exhibits C and H-J.

| District | MALDEF Total Population[8] | Prisoners to be Excluded | Adjusted Total Population | Deviation from Ideal | % Dev. from Ideal |
|---|---|---|---|---|---|
| 1 | 169,167 | 2,614 | 166,553 | 4,532 | 2.80% |
| 2 | 168,370 | 8,735 | 159,635 | -2,386 | -1.47% |
| 3 | 166,883 | 18,175 | 148,708 | -13,313 | -8.22% |
| 4 | 167,702 | 0 | 167,702 | 5,681 | 3.51% |
| 5 | 167,509 | 0 | 167,509 | 5,488 | 3.39% |
| Total | 839,631 | 29,524 | 810,107 | 18,994 | **11.73%** |

In other words, District 3 (the second majority Latino district that Plaintiffs seek) was 8.22% underpopulated and District 4 was 3.51% overpopulated, resulting in a total map deviation of 11.73%.[9] That figure that is presumptively unconstitutional, *see Connor*, 431 U.S. at 417-18, and cannot carry Plaintiffs' burden under the first *Gingles* precondition. *See Reed v. Town of Babylon*, 914 F. Supp. 843, 869-70 (E.D.N.Y. 1996) (plaintiff's proposed plan must have total deviation under 10%); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006) (in addressing the first *Gingles* precondition, an illustrative remedial minority district cannot disregard traditional districting principles).

Moreover, proposed District 3, though alleged in Paragraph 21 of the Complaint to be "geographically compact" is anything but. It begins by taking in the rural northwestern quadrant of the County, including Shafter, Delano, Wasco and McFarland, but then— lacking sufficient population even under MALDEF's unadjusted numbers—it appends a "tail" to the District that meanders south and east, skirting around northwest Bakersfield to pick up additional, more urban territory in northeast Bakersfield. *See* Defs' RJN, Exhibit B, p. 4. There is no obvious explanation for this bizarre configuration, which suggests that its sole purpose is racial gerrymandering, *see Miller v. Johnson*, 515 U.S. 900, 910-11 (1995), which would also render it unconstitutional. *See id*. At the very least, this peculiar

---

[8] *See* Defs' RJN, Exhibit B, p. 2.

[9] "Deviation from ideal district size is measured as a percentage of the ideal. 'Total deviation' of any particular plan is calculated by adding the largest negative percentage deviation to the largest positive percentage deviation to calculate the numerical distance between them." *Essex v. Kobach*, 874 F. Supp. 2d 1069, 1080 n.21 (D. Kans. 2012) (three-judge redistricting court).

configuration renders the map unsuitable for meeting the first *Gingles* precondition. *See Growe v. Emison,* 507 U.S. 25, 38 & 41 (1993) (professing doubt whether first precondition was met when the district a § 2 plaintiff proposed was "oddly shaped"); *Jeffers v. Tucker*, 847 F. Supp. 655, 661-62 (E.D. Ark. 1994) (three-judge redistricting court) (holding plaintiffs' challenge to Arkansas' legislative redistricting could not meet first *Gingles* precondition, because of the "peculiar shape" of the plaintiffs' proposed districts); *Bush v. Vera*, 517 U.S. 952, 979 (1996) ("§ 2 does not require a State to create, on predominantly racial lines, a district that is not 'reasonably compact.'").

Simply put, Plaintiffs have not adequately alleged the existence of a viable second majority-LCVAP district that respects traditional districting principles, which is required to meet the first *Gingles* precondition.

**B.**   **Second *Gingles* Precondition: Plaintiffs' Allegations of Latino "Cohesion" Are Purely Conclusory And Misstate What "Cohesion" Is.**

To establish a claim under Section 2, "'the minority group must show that it is politically cohesive.' [Citation.] As the Court explained in *Gingles*, unless members of a minority group have shared political views, 'it cannot be said that the selection of an ... electoral structure thwarts distinctive minority group interests.'" *Cano v. Davis*, 211 F. Supp. 2d 1208, 1231 (C.D. Cal. 2002) (three-judge VRA court), *aff'd*, 537 U.S. 1100 (2003) (quoting *Gingles*, 478 U.S. at 51).[10]

Only two paragraphs in the Complaint purport to address the critical requirement that Latino be shown to be politically cohesive, and they do so in purely conclusory fashion. Paragraph 2 alleges that "The 2011 redistricting plan divides a second *politically cohesive Latino community in the northern part of Kern County* into two supervisorial districts, neither one of which has sufficient Latino population to enable Latino voters to elect a candidate of their choice." (Emphasis added.) And Paragraph 18 alleges that "Latino voters

---

[10] The summary affirmation of decision of a three-judge panel by the Supreme Court makes that three-judge panel's decision binding on all lower courts as if it were a Supreme Court decision. *United States v. Blaine County,* 363 F.3d 897, 904 (9th Cir. 2004).

in Kern County are politically cohesive, manifested by the higher rates at which Latino voters express their preference for Latino candidates in racially contested elections."

Such barebones allegations that the minority class is "cohesive" are insufficient to survive a 12(b)(6) motion. Thus, in *NAACP v. Snyder*, 879 F. Supp. 2d 662 (E.D. Mich. 2012), a three-judge court dismissed a complaint challenging Michigan's state legislative redistricting plans, holding, in language pertinent here:

> Plaintiffs have failed to plead *Gingles*' second precondition of political cohesiveness. Plaintiffs' allegations are limited to unadorned, conclusory statements that Latino-American voters are "politically cohesive," "have a common and distinct history, culture, and language," and "have organized themselves collectively for political activity." Even at the pleading stage, in the absence of any supporting evidence, we cannot simply accept Plaintiffs' bare assertions that the area's Latino-American community "share[s] the same characteristics, needs, and interests." *Fletcher*, 2011 U.S. Dist. LEXIS 148004, 2011 WL 6740169 at *10 (citing *League of United Latin Am. Citizens*, 548 U.S. at 433). Although Plaintiffs need not present us with a full factual basis to support political cohesiveness, they are required to assert something beyond mere perfunctory statements.

*Id.* at 674-75.[11] *See also Broward Citizens for Fair Dists v. Broward County*, 2012 U.S. Dist. LEXIS 46828, *18 n.6 (S.D. Fla. Apr. 3, 2012) (dismissing a Section 2 complaint for failure to adequately plead the *Gingles* cohesion prong: "The Amended Complaint contains merely a bare assertion that African American and Hispanic voters 'are politically cohesive.' [Citation.] A bare assertion of an element of a cause of action does not present 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'").

In this case, Plaintiffs' complaint has failed to identify *any* specific candidates for whom Latinos are alleged to have voted cohesively or any specific elections in which they

_____

[11] The dismissal in *Snyder* was pursuant to a motion to judgment on the pleadings under FRCP 12(c), but that makes no difference here, because "[a]nalysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citations and internal quotation marks omitted).

allegedly voted cohesively, other than the Latino candidates in District 5 *who were elected*.[12]

With respect to Plaintiffs' claim that cohesion in Kern County is "manifested by the higher rates at which Latino voters express their preference for Latino candidates in racially contested elections," this allegation would be "a formulaic recitation of the elements of a cause of action" but for the fact that it misstates the legally established definition of "politically cohesion." Plaintiffs' definition of "cohesion" improperly focuses on a comparison of Latino voting patterns with non-Latino voting patterns, but that analysis is properly subsumed by the *third Gingles* precondition, not the second. The second and third *Gingles* preconditions are related, and in tandem combine to establish the existence of "racially-polarized voting," but the courts have held that they are separate and independent inquiries. *See Cano*, 211 F. Supp. 2d at 1238 n.34 ("a careful reading of *Gingles* reveals that the two are distinct inquiries."); *Gingles*, 478 U.S. at 56 (the court must make "discrete inquiries into minority and white voting practices.").

Under the second *Gingles* precondition, a minority group may vote differently from other, non-minority voters but still not be "cohesive" in a legally significant way, for example where their votes are divided amongst multiple candidates. "To say that voters who have split their vote among two or more candidates are 'cohesive' is contrary to political reality." *NAACP v. City of Columbia*, 850 F. Supp. 404, 418 (D.S.C. 1993), *aff'd*, 33 F.3d 52 (4th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 1147 (1994) (finding a lack of legally-significant cohesion where one black candidate received 52.3% of the black vote,

---

[12] As an aside, contrary to the implications of the Complaint, the Latino-preferred candidate need not be a Latino him- or herself for purposes of this analysis. *Montes v. City of Yakima*, 40 F. Supp. 3d 1377, 1402 n.4 (E.D. Wash. 2014). "The minority community may prefer a white candidate just as the white community may prefer a minority candidate." *Id.* (quoting *Ruiz v. City of Santa Maria*, 160 F.3d 543, 551 (9th Cir. 1998)). *See also Rodriguez v. Harris County, Tex.*, 964 F. Supp. 2d 686, 776 n.72 (S.D. Tex. 2013), *aff'd*, 601 Fed. Appx. 255 (5th Cir. 2015) ("To assume that the Latino candidate is the Latino-preferred candidate violates the most basic tenets of *Gingles*.").

but another black candidate received 21.7% and the other 26% of the black vote was divided among the four remaining white candidates). *See also Gomez v. City of Watsonville*, 863 F.2d 1407, 1416 (9th Cir. 1988) ("The district court expressly found that predominantly Hispanic sections of Watsonville have, in actual elections, demonstrated *near unanimous support* for Hispanic candidates.   This establishes the requisite political cohesion of the minority group." (emphasis added)); *Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 997 & 999 (D.S.D. 2004) (minority cohesion exists when 60% or more of minority voters support a given candidate, and weak cohesion can exist between 50% and 60%), *aff'd*, 461 F.3d 1011 (8th Cir. 2006);   *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 416 n.104 & 424 n.130 (S.D.N.Y.) (three-judge court), *aff'd*, 543 U.S. 997 (2004) ("cohesion" defined as minority support of 60% or more for a candidate); *Cane v. Worcester County*, 840 F. Supp. 1081, 1087-88 & n.5 (D. Md. 1994), *aff'd*, 35 F.2d 921 (4th Cir. 1994) (49% Latino support not cohesion; 60% "is the more appropriate benchmark").

A couple of hypothetical examples may suffice to demonstrate the significance of this distinction.

In the first example, presume that, in a three-candidate field, Latino voters cast 34% of their votes for Candidate A (who is Latino), 33% for Candidate B (who is non-Latino), and 33% for Candidate C (also non-Latino). But Non-Latino voters (who, for purposes of this example outnumber Latino voters), cast 60% of their votes for Candidate B, and 20% each for Candidates A and C, respectively. In that scenario, Candidate B would clearly win. Non-Latino voters, by virtue of their superior numbers and preference for Candidate B, would defeat the candidate preferred by a razor-thin plurality of Latino voters (Candidate A). But in that circumstance, notwithstanding the "higher rates at which Latino voters express[ed] their preference for Latino candidates" (Complaint ¶ 18), the second *Gingles* precondition would not be met, because Latino voters would not have cohesively supported Candidate A.

By contrast, if, in the foregoing scenario, Latino voters cast 70% of their votes for Candidate A and 15% each for Candidates B and C, the Latino voters could then be said to

be cohesive within the meaning of the second *Gingles* precondition, and if Candidate A were still defeated that election may support a finding of racially-polarized voting.[13]

While the County does not contend "that Plaintiffs must present statistical evidence of political cohesion at this stage of the proceedings, Plaintiffs must allege something beyond a conclusory allegation that [Latinos] are politically cohesive." *Broward*, 2012 U.S. Dist. LEXIS 46828, *24 n.8. At the very least, Plaintiffs must identify particular candidates that Latino voters are alleged to have cohesively supported, yet who were defeated in their election bids.

**C.    Third *Gingles* Precondition: Plaintiffs Allegations of White Bloc Voting That "Usually" Defeats Latino-Preferred Candidates Are Also Entirely Conclusory, And The Only Candidates Identified By The Complaint Are Latino Candidates Who Actually *Won*.**

Plaintiffs' allegations regarding the third *Gingles* precondition—that that the majority votes "sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate"—are equally inadequate.  Paragraphs 24-25, 27-29, and 40 allege, in entirely cursory fashion, that polarized voting exists in elections in the County; that Latino voters and non-Latino voters have different electoral preferences; and that Latino-preferred candidates are therefore defeated. But there is no meat on these bones. Plaintiffs have not identified a single candidate that was defeated due to this dynamic, or a single election in which it came into play. These conclusory allegations fail to carry Plaintiffs' pleading burden. *See, e.g., Broward*, 2012 U.S. Dist. LEXIS 46828, *23-*24 ("Plaintiffs allegation that "the non-Hispanic White population votes sufficiently as a bloc to usually defeat the Black and Hispanic electorate's preferred candidate" must be re-plead to allege more than

---

[13] *But see Gingles*, 478 U.S. at 57 ("Because loss of political power through vote dilution is distinct from the mere inability to win a particular election [citation], a pattern of racial bloc voting that extends over a period of time is more probative of a claim that a district experiences legally significant polarization than are the results of a single election."); *Cano*, 211 F. Supp. 2d at 1241 (three-judge court), *aff'd*, 537 U.S. 1100 ("As noted earlier, voting rights plaintiffs cannot prevail by demonstrating that the minority group's candidate or issue of choice was defeated in a single election.").

this mere legal conclusion.").

Moreover, the only detail that Plaintiffs *do* give undercuts their position, rather than helping it. They allege, in Paragraph 18, that "The only supervisorial district in Kern County to regularly elect a Latino in the last two decades is District 5, currently represented by Leticia Perez." And in Paragraph 30, they allege that "During the past two decades, voters in District 5, the sole Latino CVAP majority district, have consistently elected Latino candidates to the Board of Supervisors, including Pete Parra (1996-2004), Michael Rubio (2004-2010), and Leticia Perez (2012-present)." In sum, they have identified three successful Latino candidates at five different elections (1996, 2000, 2004, 2008 and 2012), and not a single unsuccessful Latino or Latino-preferred candidate. Thus, if the conclusory allegations are disregarded, and one focuses entirely on the *facts* alleged, Plaintiffs have not alleged that Latino-preferred candidates are "usually" defeated by non-Latino voters; they have alleged that Latino candidates "usually" win.

## IV. PLAINTIFFS' ALLEGATIONS REGARDING THE TOTALITY OF CIRCUMSTANCES ARE ENTIRELY CONCLUSORY AS WELL.

The three *Gingles* preconditions are necessary to establish a Section 2 violation, but they are not sufficient. *Johnson v. De Grandy*, 512 U.S. 997, 1011 (1994); *Cano*, 211 F. Supp. 2d at 1232. "[W]hen the three *Gingles* pre-conditions are met, a court evaluating a § 2 claim must then assess the totality of the circumstances to determine if the 'effects' test is met—that is, if minority voters' political power is truly diluted." *Cano*, 211 F. Supp. 2d at 1232 (citing *De Grandy*, 512 U.S. at 1013).

In assessing the "totality of circumstances," courts typically refer to the list of factors set forth in the United States Senate Judiciary Report ("Senate Report") accompanying the 1982 bill amending section 2 of the Voting Rights Act, S. Rep. No. 97-417, at 28-29 (1982), *reprinted at* 1982 U.S.C.C.A.N. 177, 206-07 ("Senate Factors"). *See Gingles*, 478 U.S. at 44-45. Plaintiffs' allegations on this score, found primarily in Paragraphs 31-36 of the Complaint, ultimately amount to no more than a "formulaic recitation" of the Senate Factors:

| The Senate Factors (*see* 1982 U.S.C.C.A.N. at 206-07) | Allegations in Complaint |
|---|---|
| "(1) the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process" | Paragraph 32: "Historically, Latinos in Kern County have been subjected to official voting-related discrimination that includes voting practices or procedures that enhance the opportunity for discrimination against Latino voters." |
| "(2) the extent to which voting in the elections of the state or political subdivision is racially polarized" | N/A (Plaintiffs allege the *existence* of racially polarized voting, but the Complaint contains no allegations regarding its *extent*) |
| "(3) the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group" | *See* Paragraph 32 above. |
| "(4) if there is a candidate slating process, whether the members of the minority group have been denied access to that process" | N/A |
| "(5) the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, | Paragraph 33: "Latinos in Kern County bear the effects of longstanding societal, economic, and educational discrimination, effects that are apparent in the areas of |

| | |
|---|---|
| employment and health, which hinder their ability to participate effectively in the political process" | education, employment, housing, and health. Such discriminatory effects hinder Latino voters' ability to participate effectively in the political process." |
| "(6) whether political campaigns have been characterized by overt or subtle racial appeals" | N/A |
| "(7) the extent to which members of the minority group have been elected to public office in the jurisdiction" | Paragraph 18: "The only supervisorial district in Kern County to regularly elect a Latino in the last two decades is District 5, currently represented by Leticia Perez." <br><br> Paragraph 30: "During the past two decades, voters in District 5, the sole Latino CVAP majority district, have consistently elected Latino candidates to the Board of Supervisors, including Pete Parra (1996-2004), Michael Rubio (2004-2010), and Leticia Perez (2012-present). |
| "(8) whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group" | Paragraph 35: "There is, and has historically been, a lack of responsiveness on the part of County Supervisors to the particularized needs of the Latino residents of Kern County." |
| "(9) whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, | Paragraph 36: "The policies underlying Defendants' failure to enact a 2011 redistricting plan that fairly reflected the |

| or standard, practice or procedure is tenuous" | Latino population growth during the prior decade are tenuous." |
|---|---|

As the above table shows, the *only* Senate Factor with respect to which Plaintiffs have provided factual allegations, rather than merely parroting the Senate Report itself, is Factor #7—"the extent to which members of the minority group have been elected to public office in the jurisdiction"—and that does nothing to help them. The allegations provided identify three different Latino supervisorial candidates who have *won* races in Bakersfield over the past few decades, while failing to identify a single Latino or Latino-supported candidate who *lost*. Based on the allegations provided, this factor would support the County's position in litigation, not the Plaintiffs', because it does not support the conclusion that Latino-supported candidates "usually" lose. *Gingles*, 478 U.S. at 50-51.

## V.   **CONCLUSION.**

Plaintiffs' Complaint amounts to nothing more than a bare-bones assertion of vote dilution, unsupported by any concrete factual allegations. This is insufficient to meet Plaintiffs' pleading burden under Rule 8, as described in *Iqbal* and *Twombly*. Accordingly, the Complaint should be dismissed for failure to state a claim.

Respectfully submitted,

Dated:  May 17, 2016

NIELSEN MERKSAMER
   PARRINELLO GROSS & LEONI LLP

By:   /s/     Christopher E. Skinnell
         Christopher E. Skinnell

*Attorneys for Defendants*
COUNTY OF KERN, *et al.*