1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT C

**Defendants' Request for Judicial Notice in Support of Motion to Dismiss [FRCP 12(B)(6)]**
*Luna, et al. v. County of Kern, et al.*, Case No. 1:16-cv-00568-DAD-JLT (E.D. Cal.)



August 9, 2011

Kern County Board of Supervisors
County Administrative Office
1115 Truxtun Avenue, Fifth Floor
Bakersfield, CA 93301

*Received by Clerk of the Board*
Additional Material for
Board Agenda Date of:  Item No.
8-9-11    PM 29
SD 1 ✓    CAO ✓
SD 2 ✓    County Counsel ✓
SD 3 ✓
SD 4 ✓
SD 5 ✓

Re: Kern County Board of Supervisor Redistricting

Dear Kern County Board of Supervisors:

On behalf of the Mexican American Legal Defense and Educational Fund (MALDEF), I write to urge to you delay a possible vote on final boundaries. MALDEF has serious legal and process concerns surrounding the Kern County Board of Supervisors redistricting process, and the staff-imposed deadline of September 27, 2011 for plan completion.

Kern County Board of Supervisors redistricting has the following map and process issues:

- A potential One Person, One Vote violation based on the exclusion (not re-allocation) of the total prison population;
- A potential Section 2 of the Voting Rights Act (VRA) violation due to the lack of proper analysis of a potential two Latino-opportunity district plan;
- Transparency and public trust issues surrounding the vote of "Option 7" by the Board of Supervisors on Tuesday, August 2, 2011. Moreover, the Board of Supervisors did not release any data beyond total population to the public. Without more detailed data, the public cannot conduct a proper analysis and will have no opportunity to give responsible, informed testimony.

First, the Constitutional one person, one vote standard requires a redistricting plan analyzing the total population as calculated by the Census Bureau's PL94-171 redistricting data. Removing the prison population may result in a Constitutional challenge to Kern County's redistricting plans because Supervisors would have to represent unbalanced amounts of people within their districts thereby affecting the vote and constituency service efficiency of Kern County residents.

Second, an additional Section 2 compliant district in Kern County maybe possible, and it would be a responsible course of action for the county to fully explore the possibility to avoid potential litigation. MALDEF provided a plan example to the Board of Supervisors which contained two districts where Latinos comprised over 50% of the districts' citizen voting age population, satisfying prong one of the *Gingles* test. This example should give the Board of Supervisors serious pause as to whether Option 7

1



violates the VRA, and the Board of Supervisors should conduct a detailed analysis on this issue. There is no racially polarized voting analysis for Kern County, and given the substantial differences between Kern County Latinos and non-Latinos in income, education, poverty, housing patterns, and voter preferences, the responsible assumption the Board of Supervisors should take is that racially polarized voting exists in Kern County.

Finally, there is a serious transparency issue with the Kern County redistricting process which has damaged public trust.
- To begin with, the County did not publish any type of statistics beyond prison adjusted total population for proposed redistricting plans. While some data were shown at workshops, it was not enough information to responsibly analyze proposed districts in order to gauge make-up and potential effectiveness.
- Secondly, the Board of Supervisors did not properly inform the public regarding VRA compliance, including the role of citizen voting age population in plan analysis. The Board did not provide citizen voting age population statistics on proposed plan options, so the public would know if a proposed option potentially violated the Voting Rights Act. Further, staff did not point out if options potentially violated the VRA until the day that the Board of Supervisors voted on maps, and therefore forced the public to blindly support unrealistic options without any proper context to evaluate these options, rendering testimony ineffective. The Department of Justice's Special Tabulation data of citizen voting age population has been readily available at the block level for state level redistricting. This data is publishable, could be easily secured by staff, and could have been posted to allow the public to effectively participate in the process.
- Lastly, the release of the supervisors' preferred Option 7, and passing it with little time for the public to properly respond, analyze, and comment also hurt public trust in the redistricting process. The Board of Supervisors should note that many local newspapers and blogs also condemned the Board for its plan passage tactics.

In closing, MALDEF urges the County Board of Supervisors to delay its adoption of plans. Further, after the delay, the Board of Supervisors should release the data demographics, including citizen voting age population for all proposed options that staff has been using to analyze for Voting Rights Act compliance so the public can conduct its own careful review of plans. Finally, the Board of Supervisors should direct staff to determine if a second VRA compliant district can be drawn.



MALDEF is willing to work with this body and its staff to help craft new plans and offer our technical and legal expertise in the redistricting process to help deliver fair representation to Kern County. I may be contacted for questions via email at sochoa@maldef.org, or via phone at 213-629-2512 ex. 130.

Thank you,

Steven A. Ochoa
National Redistricting Coordinator
Mexican American Legal Defense and Educational Fund (MALDEF)