Theresa A. Goldner, Esq.
KERN COUNTY COUNSEL
Mark Nations, Esq. (S.B. No. 101838)
CHIEF DEPUTY COUNTY COUNSEL
1115 Truxtun Avenue, Fourth Floor
Bakersfield, California 93301
Telephone: (661) 868-3800
Facsimile: (661) 868-3805
Email: mnations@co.kern.ca.us

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP
    Marguerite Mary Leoni, Esq. (S.B. No. 101696)
    Christopher E. Skinnell, Esq. (S.B. No. 227093)
    Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone:  (415) 389-6800
Facsimile:   (415) 388-6874
Email: mleoni@nmgovlaw.com
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com

*Attorneys for Defendants*
COUNTY OF KERN, *ET AL.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR LUNA, *et al.*,<br><br>          *Plaintiffs*,<br><br>vs.<br><br>COUNTY OF KERN, *et al.*,<br><br>          *Defendants*. | Case #1:16-cv-00568-DAD-JLT<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [FRCP 12(b)(6)]**<br><br>JUDGE: Hon. Dale A. Drozd<br>COURTROOM: 5<br>HEARING DATE: June 21, 2016<br>TIME: 9:30 a.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   PLAINTIFFS' CONTENTION THAT THE COURT CANNOT CONSIDER JUDICIALLY NOTICEABLE PUBLIC RECORDS LACKS MERIT.........................................................................................................2

III.  THAT RACIAL POLARIZATION AND THE ABILITY TO DRAW A SECOND MAJORITY-LATINO DISTRICT MUST ULTIMATELY BE PROVED BY EXPERT TESTIMONY DOES NOT EXCUSE PLAINTIFFS FROM PLEADING THOSE FACTS IN A NONCONCLUSORY MANNER ...............................................4

IV.   PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT ADEQUATELY ALLEGE THE *GINGLES* PRECONDITIONS ...........................5

    A.   First *Gingles* Precondition: Plaintiffs' Disavowal Of The MALDEF Map Does Not Provide A Reason To Deny Dismissal; It Just Emphasizes The Need For *Factual* Allegations—And A Map—Rather Than Conclusions...................................6

        1.   The "odd," "irregular" shape of the MALDEF map is relevant to the first *Gingles* precondition ................................8

        2.   An illustrative plan cannot disregard equal population rules ..................................................................................10

    B.   Second *Gingles* Precondition: Plaintiffs' Allegations of Latino "Cohesion" Are Purely Conclusory And Are Based On A Legally Incorrect Definition of "Cohesion" ....................................11

    C.   Third *Gingles* Precondition: Plaintiffs' Allegations of White Bloc Voting That "Usually" Defeats Latino-Preferred Candidates Are Conclusory .........................................................13

V.    PLAINTIFFS' FAILURE TO PROVIDE NON-CONCLUSORY FACTUAL ALLEGATIONS REGARDING *ANY* OF THE "SENATE FACTORS" IS FATAL TO THEIR CLAIM ............................................14

VI.   DEFENDANTS DO NOT OPPOSE PLAINTIFFS' REQUEST TO AMEND.........................................................................................................15

VII.  CONCLUSION..............................................................................................15

---

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................*passim*

*Bartlett v. Strickland*,
   556 U.S. 1 (2009) ................................................................................10

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) .................................................................*passim*

*Broward Citizens for Fair Dists v. Broward County*,
   2012 U.S. Dist. LEXIS 46828 (S.D. Fla. Apr. 3, 2012) .........................*passim*

*Brown v. Thomson*,
   462 U.S. 835 (1983) (O'Connor, J., concurring) ........................................10

*Calvin v. Jefferson Cnty. Bd. of Comm'rs*,
   2016 U.S. Dist. LEXIS 36121 (N.D. Fla. Mar. 16, 2016) ...............................3

*Cano v. Davis*,
   211 F. Supp. 2d 1208 (C.D. Cal. 2002), *aff'd*, 537 U.S. 1100 (2003)...........................13

*Connor v. Finch*,
   431 U.S. 407 (1977) ...........................................................................10

*Coon v. Ga. Pac. Corp.*,
   829 F.2d 1563 (11th Cir. 1987)...............................................................6

*Davidson v. City of Cranston*,
   2016 U.S. Dist. LEXIS 67674 (D.R.I. May 24, 2016)......................................3

*Dymnioski v. Crown Equip. Corp.*,
   2012 U.S. Dist. LEXIS 76955 (D.N.J. June 4, 2012) ....................................4

*Earl Old Person v. Brown*,
   312 F.3d 1036 (9th Cir. 2002), *cert. denied*, 540 U.S. 1016 (2003).............................15

*Fasugbe v. Willms*,
   2011 U.S. Dist. LEXIS 56569 (E.D. Cal. May 26, 2011)....................................7

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999)................................................................2

*Hall v. Va.*,
    385 F.3d 421 (4th Cir. 2004), *cert. denied*, 544 U.S. 961 (2005) .....................................1

*Harris v. Ariz. Indep. Redistricting Comm'n*,
    136 S. Ct. 1301 (U.S. 2016) .....................................11

*Hernandez v. Select Portfolio Servicing, Inc.*,
    2015 U.S. Dist. LEXIS 82922 (C.D. Cal. June 25, 2015) .....................................7

*Hicks v. City of Vallejo*,
    2015 U.S. Dist. LEXIS 68621 (E.D. Cal. May 27, 2015) (Drozd, J.) .....................................3

*Hotel Emples. & Rest. Emples. Local 2 v. Vista Inn Mgmt. Co.*,
    393 F. Supp. 2d 972 (N.D. Cal. 2005) .....................................4

*In re Aluminum Warehousing Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29, 2014) .....................................7

*Jackson v. Fischer*,
    2015 U.S. Dist. LEXIS 32128 (N.D. Cal. Mar. 13, 2015) .....................................4

*Johnson v. De Grandy*,
    512 U.S. 997 (1994) .....................................15

*League of United Latin Am. Citizens v. Perry*,
    548 U.S. 399 (2006) .....................................8, 9

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .....................................3

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) .....................................15

*Montes v. City of Yakima*,
    40 F. Supp. 3d 1377 (E.D. Wash. 2014) .....................................9

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .....................................5

*NAACP v. Snyder*,
    879 F. Supp. 2d 662 (E.D. Mich. 2012) .....................................1, 11, 12

*Navajo Nation v. San Juan Cnty.*,
    2015 U.S. Dist. LEXIS 165692 (D. Utah Dec. 9, 2015) .....................................11

*O'Lear v. Miller*,
   222 F. Supp. 2d 850 (E.D. Mich.), *aff'd*, 537 U.S. 997 (2002) ........................................1

*Proxyconn Inc. v. Microsoft Corp.*,
   2012 U.S. Dist. LEXIS 70614 (C.D. Cal. May 16, 2012) ..................................................5

*Radogno v. Ill. State Bd. of Elections*,
   2011 U.S. Dist. LEXIS 122053 (N.D. Ill. Oct. 21, 2011)..................................................1

*Reed v. Town of Babylon*,
   914 F. Supp. 843 (E.D.N.Y. 1996) ...............................................................................10

*Rodriguez v. Harris County, Tex.*,
   964 F. Supp. 2d 686 (S.D. Tex. 2013) ......................................................................9, 11

*Romero v. Pomona*,
   665 F. Supp. 853 (C.D. Cal. 1987), *aff'd*, 883 F.3d 1418 (9th Cir. 1988) ....................10

*Ruiz v. City of Santa Maria*,
   160 F.3d 543 (9th Cir. 1998)....................................................................................9, 12

*Sensley v. Albritton*,
   385 F.3d 591 (5th Cir. 2004)....................................................................................8, 9

*Shaw v. Reno*,
   509 U.S. 630 (1993) ......................................................................................................9

*Skorepa v. Chula Vista*,
   723 F. Supp. 1384 (S.D. Cal. 1989) .............................................................................10

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..........................................................................................6

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ...............................................................................................*passim*

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*,
   2013 U.S. Dist. LEXIS 121401 (N.D. Cal. Aug. 26, 2013)..............................................5

*United States v. Blaine County, Mont.*,
   363 F.3d 897 (9th Cir. 2004)..................................................................................12, 14

**Statutes**

Section 2 of the federal Voting Rights Act, 52 U.S.C. § 10301 (formerly
42 U.S.C. § 1973) ...................................................................................*passim*

Section 4 of the federal Voting Rights Act, 52 U.S.C. § 10303 (formerly
42 U.S.C. § 1973b) ...................................................................................11

Section 5 of the federal Voting Rights Act, 52 U.S.C. § 10304 (formerly
42 U.S.C. § 1973c) ...................................................................................11

28 U.S.C. § 1253 ...................................................................................12

28 U.S.C. § 2284(a)...................................................................................12

**Other Authorities**

Fed. R. Civ. Proc. 8 ...................................................................................2, 5, 7, 15

Fed. R. Civ. Proc. 8(a)(2) ...................................................................................6

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................1, 5

# I.      **<u>INTRODUCTION</u>.**

Contrary to Plaintiffs' implication, ample precedent supports dismissal of a Section 2 claim under Rule 12(b)(6) where the complaint fails to adequately allege *facts* sufficient to state a cause of action, rather than merely conclusory allegations.[1] Such a result is warranted here, because the Complaint in this action consists primarily of naked assertions, devoid of further factual enhancement, and a formulaic recitation of the elements of a Section 2 claim, as set forth in *Thornburg v. Gingles*, 478 U.S. 30 (1986) ("*Gingles*").

With respect to the second and third *Gingles* preconditions and the so-called "Senate Factors," the Complaint consists *entirely* of conclusory allegations (except for allegations that Latino candidates have consistently been elected to the Board of Supervisors from District 5 over the past few decades, which does nothing to help Plaintiffs' claim). It is only with respect to the first *Gingles* precondition that the Complaint *appeared* to provide any non-conclusory allegations, by citing to a map (the 2011 MALDEF map) that purportedly demonstrates the ability to draw two majority-Latino supervisorial districts in Kern County.

Concretely alleging one of the three *Gingles* preconditions is not sufficient to state a claim for relief, but it turns out that Plaintiffs have not even done that. The Opposition reveals that the appearance of concreteness is illusory.

Understandably taking Plaintiffs' allegations at face value, Defendants submitted judicially noticeable public records demonstrating that the map referred to in the Complaint fails to meet one-person, one-vote standards (which Plaintiffs acknowledge), and having not disputed that the 2011 MALDEF map is malapportioned, Plaintiffs distance themselves from the map as though allergic to it.[2] But disavowal of that map does not help them avoid

---

[1] *See, e.g., NAACP v. Snyder*, 879 F. Supp. 2d 662 (E.D. Mich. 2012) (three-judge court); *Broward Citizens for Fair Dists v. Broward County*, 2012 U.S. Dist. LEXIS 46828 (S.D. Fla. Apr. 3, 2012); *O'Lear v. Miller*, 222 F. Supp. 2d 850, 860-61 (E.D. Mich.) (three-judge court), *aff'd*, **537 U.S. 997 (2002)**; *Radogno v. Ill. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 122053, *7-*10 (N.D. Ill. Oct. 21, 2011) (three-judge court); *Hall v. Va.*, 385 F.3d 421, 424 n.3 (4th Cir. 2004), *cert. denied*, 544 U.S. 961 (2005) (affirming dismissal of Section 2 claim under Rule 12(b)(6)).

[2] Plaintiffs vehemently argue that MALDEF map cannot be "imputed to Plaintiffs simply because it was drawn five years ago by the law firm that now represents them." Opp'n at 1:17-18.

---

dismissal. Instead, it leaves Defendants to simply guess at what the substance of Plaintiffs' claim really is—which is the very result Rule 8, as interpreted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), is meant to avoid.

Abandoning the MALDEF map leaves Plaintiffs with <u>no</u> concrete factual allegations to support their otherwise-conclusory allegations on this score—a deficiency that would justify dismissal in its own right. But beyond that, the Complaint's reliance on the defective MALDEF map undermines the "plausibility" of Plaintiffs' other (conclusory) claims of an ability to draw a second viable majority-Latino seat, and further underscores the inadequacy of Plaintiffs' failure to provide concrete information regarding the manner in which a second majority-Latino CVAP district could be created.

Defendants do not oppose Plaintiffs' request for leave to amend, to try to state facts that would state a plausible claim for relief, but the present Complaint does not do so.

## II. <u>PLAINTIFFS' CONTENTION THAT THE COURT CANNOT CONSIDER JUDICIALLY NOTICEABLE PUBLIC RECORDS LACKS MERIT.</u>

Plaintiffs, tellingly, have not disputed the accuracy or authenticity of any of the public records that Kern County has submitted for judicial notice, though it is their burden to do so if they wish to overcome the presumption of those public records' trustworthiness.[3] Moreover, Plaintiffs *expressly* "do not dispute" the facts reflected in those records:

- "that the 2011 MALDEF map included prisoner population in the population base for evaluating total population";

- "that Kern County excluded those prisoners";

- "that the County did so following the advice from the Attorney General"; or

---

But Defendants did not simply come up with the map on their own and tried to pin it on Plaintiffs. *Plaintiffs themselves* put the validity of that map into play, by citing it in their Complaint.

[3] *See Gilbrook v. City of Westminster,* 177 F.3d 839, 858 (9th Cir. 1999) ("A trial court may presume that public records are authentic and trustworthy. The burden of establishing otherwise falls on the opponent of the evidence, who must come 'forward with enough negative factors to persuade a court that a report should not be admitted.'").

REPLY IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6)]
OF DEFENDANTS COUNTY OF KERN, *et al*.

CASE NO. 1:16-cv-00568-DAD-JLT
Page 2

- "that excluding prisoners from the 2011 MALDEF map *could possibly* cause the total deviation in the plan to exceed 10%."

*See* Opp'n at 7:12-17. Plaintiffs also never dispute that failure to exclude prisoners from the population has been held to violate constitutional one-person, one-vote rules. *See Davidson v. City of Cranston*, 2016 U.S. Dist. LEXIS 67674 (D.R.I. May 24, 2016); *Calvin v. Jefferson Cnty. Bd. of Comm'rs*, 2016 U.S. Dist. LEXIS 36121 (N.D. Fla. Mar. 16, 2016).

Instead, Plaintiffs simply urge the Court to disregard the facts reflected in undisputed public records on the grounds that (1) most of the records are not referred to in the Complaint, and (2) the map that *was* referred to in the Complaint is purportedly not "central" to Plaintiffs' claims (though one therefore wonders why Plaintiffs saw fit to call the Court's attention to it). In any event, Plaintiffs just have the law wrong. The Court can, and should, consider these documents in addressing the motion to dismiss.

As discussed more fully in Defendants' response to Plaintiffs' objections to the request for judicial notice, under Ninth Circuit case law there are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). One is for documents that are attached to a complaint or (if not attached), referred to and "necessarily" relied upon by the complaint, where the authenticity of the document is not contested. The other exception—the one upon which Defendants have relied—is for "matters of public record." *Id.* at 688-89. *See also Hicks v. City of Vallejo*, 2015 U.S. Dist. LEXIS 68621, *8 (E.D. Cal. May 27, 2015) (Drozd, J.) (noting same exceptions).

Plaintiffs' contention that, to be considered in connection with a motion to dismiss, a document must be referred to in the complaint or be "central" to the claim focuses entirely on the test that applies to the first (incorporation-by-reference) exception (*see* Opp'n at 4:17-25), as do the cases Plaintiffs rely upon. No case that Plaintiffs cite, either in their Opposition or their Objections to Defendants' Request for Judicial Notice, nor any case that Defendants have found, holds that the same test applies to the exception for public records.

REPLY IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6)]
OF DEFENDANTS COUNTY OF KERN, *et al*.

CASE NO. 1:16-cv-00568-DAD-JLT
Page 3

1    *See Hotel Emples. & Rest. Emples. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972,

2    979 (N.D. Cal. 2005) (distinguishing between the two exceptions on this very basis).

3    **III.    THAT RACIAL POLARIZATION AND THE ABILITY TO DRAW A**
     **SECOND MAJORITY-LATINO DISTRICT MUST ULTIMATELY BE**
4    **PROVED BY EXPERT TESTIMONY DOES NOT EXCUSE PLAINTIFFS**
     **FROM PLEADING THOSE FACTS IN A NONCONCLUSORY MANNER.**
5

6            Plaintiffs' Opposition expounds at great length on the fact that proof of racial

7    polarization and of a viable illustrative map will ultimately require discovery and expert

8    testimony, and on the statistical methods that experts often use to prove such claims. From

9    this unremarkable recitation of how Section 2 trials proceed, they improperly draw the

10   conclusion that they are excused from alleging the factual predicates for racial polarization

11   and the ability to draw a second majority-Latino district until such time as they produce

12   their expert reports. That is not the case. "*[B]efore proceeding to discovery*, a complaint

13   must allege facts suggestive of illegal conduct," *Twombly*, 550 U.S at 563 n.8 (emphasis

14   added), and discovery "cannot serve as a fishing expedition through which plaintiff

15   searches for evidence to support facts he has not yet pleaded," and it "is not meant to serve

16   as a basis for plaintiffs to develop a legal theory on which they can prevail." *Dymnioski v.*

17   *Crown Equip. Corp.*, 2012 U.S. Dist. LEXIS 76955, *17 (D.N.J. June 4, 2012).

18           Plaintiffs improperly conflate the facts that must be alleged with the methods by

19   which they are proven. In the complaint, Plaintiffs must allege—with some specificity—

20   *facts* that support an inference of racially-polarized voting. Defendants are not contending

21   that Plaintiffs' complaint must set forth the statistical, expert analysis that would prove

22   those facts, but Plaintiffs also cannot simply rely on conclusory allegations that polarized

23   voting exists, without elaboration. For example, in which elections have the Latinos

24   cohesively supported a candidate? Who were those candidates? Were they defeated? What

25   does the second majority-Latino CVAP district look like? These are basic, non-conclusory

26   facts that are required to establish the plausibility of Plaintiffs' claims. That, having alleged

27   them, those facts may require expert testimony to establish them as true, does not relieve

28   Plaintiffs of the obligation to allege them in the first instance. *See, e.g., Jackson v. Fischer*,

2015 U.S. Dist. LEXIS 32128, *56-*57 (N.D. Cal. Mar. 13, 2015) (granting judgment on the pleadings and holding, "As for Jackson's repeated assertion that 'expert testimony' will show some fact or prove some theory, the court notes that the issue for resolution in the present motion is whether she has stated a claim of primary liability under the PSLRA against Fischer. Whether she can or cannot establish some fact by means of expert testimony is irrelevant, as are her claims that 'discovery will show' some fact or other.").

## IV.  PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT ADEQUATELY ALLEGE THE *GINGLES* PRECONDITIONS.

As Plaintiffs themselves acknowledge, "*Iqbal* heightened the pleading standard for federal court complaints[.]" *See* Opp'n at 1:5. Under *Iqbal* and *Twombly*, it is now the case that for a complaint to survive a Rule 12(b)(6) motion, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [Citation.] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555 & 557). The Ninth Circuit has characterized this new standard as "a significant change, with broad-reaching implications," *Moss v. United States Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009), and several courts have described this standard as a "sea change" in the rules governing pleadings. *See, e.g., Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2013 U.S. Dist. LEXIS 121401, *8 n.3 (N.D. Cal. Aug. 26, 2013); *Proxyconn Inc. v. Microsoft Corp.*, 2012 U.S. Dist. LEXIS 70614, *10 (C.D. Cal. May 16, 2012).

Plaintiffs' Complaint does not meet the "heightened" standard of *Iqbal* and *Twombly*. Instead, it simply recites conclusory allegations and bare-bones, unadorned, cursory recitations of the elements of a Section 2 claim as summarized in *Gingles*.

Plaintiffs contend that the failure to plead their claim with sufficient specificity should be forgiven in view of the fact that the Voting Rights Act is a "remedial" statute, which is to be broadly construed to achieve its purpose. But, even before the *Iqbal/Twombly* sea change, "the Supreme Court ha[d] rejected the argument that the

legislation's remedial purpose excuses compliance with Rule 8(a)(2)." *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam), which rejected a similar argument under Title VII, holding "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). Moreover, *Iqbal* itself stated that the Court's "decision in *Twombly* expounded the pleading standard for '*all civil actions*[.]'" *Iqbal*, 556 U.S. at 684 (emphasis added).

> **A.    First *Gingles* Precondition: Plaintiffs' Disavowal Of The MALDEF Map Does Not Provide A Reason To Deny Dismissal; It Just Emphasizes The Need For *Factual* Allegations—And A Map—Rather Than Conclusions.**

The Complaint characterizes the 2011 MALDEF map as evidence of "the demonstrable ability to add a second Latino CVAP majority district, and describes the map as a "[g]eographically compact and equipopulous plan … that increased the number of districts in which Latinos would constitute a majority of the CVAP from one district to two districts," *see* Complaint at ¶¶ 21 & 22. In their opposition, however, Plaintiffs explicitly do not dispute that public records show the 2011 MALDEF map is <u>not</u> equipopulous. Thus, despite the general rule that allegations in a complaint are accepted as true in ruling on a motion to dismiss, the Court need *not* accept this allegation as true. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Without a legally-sufficient illustrative district to rely on, the Complaint warrants dismissal for failure to provide sufficient factual allegations regarding the first *Gingles* precondition. Standing alone, a generic allegation such as that in Paragraph 39 that another majority-Latino district can be drawn, but without demonstrating where and how, does not meet the *Iqbal/Twombly* standard. Thus, in *Broward Citizens*, a federal court held that the plaintiffs' failure to provide the court with an illustrative map, or at least a detailed summary of such a map, rendered the complaint's allegations regarding the first *Gingles* precondition "conclusory and insufficient to meet Plaintiffs' pleading burden." 2012 U.S. Dist. LEXIS 46828, *18 n.6. In support of this holding, it cited *Iqbal*'s admonition that

"'Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-79).

The insufficiency of the 2011 MALDEF map and Plaintiffs' disavowal of that map have broader implications for this motion than simply negating Paragraphs 21 and 22; it also eliminates the "plausibility" of the conclusory allegations in Paragraph 39 as well, because Plaintiffs have nothing else to fall back on. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). And the courts have recognized that in applying this standard, "allegations directly contradicted by the public record impact plausibility." *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, *61 n.22 (S.D.N.Y. Aug. 29, 2014) (granting motion to dismiss); *see also Fasugbe v. Willms*, 2011 U.S. Dist. LEXIS 56569, *14-*15 (E.D. Cal. May 26, 2011) (a court may consider inconsistent or contradictory allegations in judging "plausibility"); *Hernandez v. Select Portfolio Servicing, Inc.*, 2015 U.S. Dist. LEXIS 82922, *24 (C.D. Cal. June 25, 2015) ("Contradictory allegations such as these are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*.").

Considering Paragraph 39 without reference to the disavowed allegations of Paragraphs 21 and 22 further undermines the sufficiency of Paragraph 39, because (1) the only *factual* allegations Plaintiffs give to support the conclusory allegation in Paragraph 39 are the allegations found in Paragraphs 21 and 22, and those allegations are inconsistent with the public record; and (2) it calls into question the plausibility of Plaintiffs' claim in Paragraph 39 that two "properly apportioned" electoral districts can be drawn in which Latinos would constitute a majority of the CVAP, when Plaintiffs have characterized the malapportioned MALDEF map as "equipopulous." Plaintiffs implicitly concede Paragraph 39 alone is insufficient to meet their pleading burden but assert the last phrase in Paragraph 22 provides the needed specificity by identifying where the second Latino CVAP majority district could have be drawn, noting the plan adopted by Defendant, "fractured a large and

geographically compact Latino community of eligible voters between District 1 and District 4." *See* Opp'n at 5:19-26; *id.* at 14:17-25. The quoted phrase, however, appears in the very *same sentence* stating that the disavowed 2011 MALDEF map reflected a "demonstrable ability to add a second Latino CVAP majority district," *see* Complaint, p. 3:26-27. Thus, Paragraph 22 provides no specificity at all to Paragraph 39, because the subject of Paragraph 22 is the legally-deficient map that Plaintiffs have not disavowed.

### 1. The "odd," "irregular" shape of the MALDEF map is relevant to the first *Gingles* precondition.

It is curious that Plaintiffs' expend so much effort to argue that the odd shape of the 2011 MALDEF districts is irrelevant to the first *Gingles* precondition, given that they have actively disavowed that map, and given that they have admitted the map's failure to comply with constitutional one person, one vote standards. But curiosity aside, the argument is also one that has been advanced, and rejected, by the courts before.

Specifically, in *Sensley v. Albritton*, 385 F.3d 591 (5th Cir. 2004), the Fifth Circuit Court of Appeals acknowledged—as Plaintiffs herein argue—that the "compactness" inquiries are different for purposes of the first *Gingles* precondition on the one hand, and a racial gerrymandering claim on the other. The focus of the former is the compactness of the minority group; the focus of the latter is "on the contours of district lines to determine whether race was the predominant factor in drawing those lines." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006) ("*LULAC*"). Yet the *Sensley* court still rejected the contention, parroted by Plaintiffs here, that the shape of the illustrative district is irrelevant, holding, "As the geographical shape of any proposed district necessarily directly relates to the geographical compactness and population dispersal of the minority community in question, **it is clear that shape is a significant factor that courts can and must consider in a *Gingles* compactness inquiry**." 385 F.3d at 596 (emphasis added).

Nor is there any merit to Plaintiffs' contention that *Gingles* "compactness" can only be judged by the introduction of statistical evidence, such as the "Reock test." In applying the first *Gingles* precondition, "[t]here are many methods by which to assess the shape of

the district. One recognized method is simply to examine the physical boundaries of the maps and the proposed districts and, based on that visual examination, determine if the district is strangely shaped. *Sensley*, 385 F.3d at 596. This geometric test, though imprecise, offers some threshold assessment of compactness." *Rodriguez v. Harris County, Tex.*, 964 F. Supp. 2d 686, 738-39 (S.D. Tex. 2013). In fact, the very case that Plaintiffs rely on for the notion that statistical analysis is required—*Montes v. City of Yakima*, 40 F. Supp. 3d 1377 (E.D. Wash. 2014)—assessed compactness based on a "visual examination" of the type endorsed by *Sensley* and *Rodriguez*. *Id*. at 1393 ("As Plaintiffs correctly note, the compactness of the minority districts in these proposals is easily confirmed by simply looking at the maps of the proposed districts."). The "Reock test" merely provided further confirmation of what the court could see with its own eyes.

*Ruiz v. City of Santa Maria*, 160 F.3d 543 (9th Cir. 1998), is also not to the contrary. That case does not hold that the shape of a district is irrelevant to analysis of compactness under the first *Gingles* prong. In fact, it did not substantively address the first *Gingles* precondition at all.[4] That case focuses almost exclusively on the third *Gingles* precondition (white bloc voting), and it thus held that "[r]aising the strict scrutiny issue in its analysis of the third *Gingles* requirement was erroneous." 160 F.3d at 559 (underline added).

And finally, Defendants would note that the difference between compactness for *Gingles* purposes and for racial gerrymandering purposes is not as great as Plaintiffs would have this Court believe. Both, after all, ultimately require attention to whether the proposed map conforms to "traditional districting principles, such as maintaining communities of interest and traditional boundaries." *LULAC*, 548 U.S. at 433 (*Gingles* compactness); *Shaw v. Reno*, 509 U.S. 630, 642 (1993) (racial gerrymandering).

In this case, the proposed district's highly irregular shape, coupled with its disregard of equal population principles and its combination of rural communities in northwestern

---

[4] The only discussion of the first *Gingles* precondition in *Ruiz* is a holding that the trial court improperly denied plaintiffs' motion for summary judgment on that precondition as moot. *See* 160 F.3d at 548 n.12 and 559.

REPLY IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6)]
OF DEFENDANTS COUNTY OF KERN, *et al*.

CASE NO. 1:16-cv-00568-DAD-JLT
Page 9

1    Kern County with more urban territory in northeast Bakersfield make that map insufficient

2    to support a "plausible" allegation of the ability to meet the first *Gingles* precondition.

### 2.    An illustrative plan cannot disregard equal population rules.

4        Finally, Plaintiffs spill considerable ink arguing that a plan submitted to meet the

5    requirements of the first *Gingles* precondition need not have a deviation under 10%. Again,

6    it is surprising that Plaintiffs devote so much effort to this argument, given their vehement

7    disavowal of the MALDEF map. But, surprising or not, this claim is also wrong on the law.

8        The Supreme Court has recognized that an "apportionment scheme with a maximum

9    population deviation exceeding 10% creates a prima facie case of discrimination." *Brown v.*

10   *Thomson*, 462 U.S. 835, 850 (1983) (O'Connor, J., concurring); *Connor v. Finch*, 431 U.S.

11   407, 417-18 (1977) (total deviation over 10% presumptively unconstitutional).

12   Accordingly, in *Reed v. Town of Babylon*, 914 F. Supp. 843, 869-70 (E.D.N.Y. 1996), the

13   district court held that a plaintiff's illustrative map could satisfy the first *Gingles*

14   precondition "so long as the total deviation within the remedial plan does not exceed 10%."

15   *Id.* at 869-70. In *Romero v. Pomona*, 665 F. Supp. 853 (C.D. Cal. 1987), *aff'd*, 883 F.3d

16   1418 (9th Cir. 1988), the district court refused to depart from the 10% threshold to allow

17   plaintiffs to meet the first *Gingles* precondition, ultimately dismissing the case for that

18   failure. *Id.* at 864, 869. And in *Skorepa v. Chula Vista*, 723 F. Supp. 1384 (S.D. Cal. 1989),

19   the district court expressly held, "any plan minority voters submit must meet constitutional

20   standards; minority voters cannot violate the 'one man, one vote' requirement to satisfy the

21   *Thornburg* size prerequisite. [Citing *Romero* and *Reynolds v. Sims,* 377 U.S. 533 (1964)].

22   The Court may deviate by up to 10% in evaluating the population of a hypothetical district

23   without violating the one man, one vote requirement." *Id.* at 1389-90.

24       Plaintiffs have cited <u>no</u> case accepting an illustrative plan with a deviation over 10%

25   for purposes of the first *Gingles* precondition. Indeed, adopting such a rule would be

26   inconsistent with the Supreme Court's holding in *Bartlett v. Strickland*, 556 U.S. 1 (2009),

27   that that precondition cannot be met by a district with a minority citizen voting age

28   population under 50%, because plaintiffs would be able to overcome this requirement by

the simple ruse of underpopulating their proposed districts, as in the 2011 MALDEF map.

Plaintiffs' citation to *Harris v. Ariz. Indep. Redistricting Comm'n*, 136 S. Ct. 1301 (U.S. 2016), for the premise that "traditional redistricting principles that may justify deviations include compliance with requirements of the Voting Rights Act," *see* Opp'n at 13:4-6, is blatantly misleading. "It is not necessary to violate the Equal Protection Clause to preserve 'majority-minority' districts[,]" *Navajo Nation v. San Juan Cnty.*, 2015 U.S. Dist. LEXIS 165692, *43 (D. Utah Dec. 9, 2015), and *Harris* does not hold otherwise. The latter case dealt with the question of whether a State violates one person, one vote principles when it chooses to systematically underpopulate minority districts to comply with Sections *4 and 5* of the Voting Rights Act (which are no longer in effect, *see* 136 S. Ct. at 1308), *while staying within the 10% deviation that is presumptively legitimate*. *Id.* at 1309.

**B.     Second *Gingles* Precondition: Plaintiffs' Allegations of Latino "Cohesion" Are Purely Conclusory And Are Based On A Legally Incorrect Definition of "Cohesion."**

Again, much of Plaintiffs' argument on the second *Gingles* precondition amounts to nothing more than a recitation of the types of statistical evidence that will be required to prove Latino cohesion, but—as discussed above—that does not free them of the obligation to allege facts to support the inference that such cohesion exists.

Merely asserting that Latinos in Kern County "cohesively" is not sufficient to withstand a motion to dismiss. Thus, in *NAACP v. Snyder*, a special three-judge court dismissed a complaint challenging Michigan's legislative districts, in part, because

> Plaintiffs have failed to plead *Gingles*' second precondition of political cohesiveness. **Plaintiffs' allegations are limited to unadorned, conclusory statements that Latino-American voters are "politically cohesive,"** "have a common and distinct history, culture, and language," and "have organized themselves collectively for political activity." …Although Plaintiffs need not present us with a full factual basis to support political cohesiveness, they are required to assert something beyond mere perfunctory statements.

879 F. Supp. 2d at 674-75 (emphasis added).

Likewise, in *Broward Citizens*, the court dismissed a Section 2 complaint for failure to adequately plead the *Gingles* cohesion prong, because "The Amended Complaint

contains merely a bare assertion that African American and Hispanic voters 'are politically cohesive.'" 2012 U.S. Dist. LEXIS 46828, *18 n.6.

Plaintiffs' only responses to *Snyder* and *Broward* are (1) to misleadingly dismiss them as being solely about the failure to adequately plead the first *Gingles* precondition, and (2) to belittle them as merely "out-of-circuit district court cases." *See* Opp'n at 20.

With respect to the first point, while the *Snyder* and *Broward* courts found their respective plaintiffs' failure to allege the first *Gingles* precondition to be a significant defect, they both <u>also</u> held that the plaintiffs had failed to adequately plead the second (and third) *Gingles* precondition, for reasons that apply equally to the Complaint in this case.

Regarding Plaintiffs' disdain for "out-of-circuit district court opinions": (1) Plaintiffs have not cited (and Defendants have not found) any binding case law from the Ninth Circuit or the Supreme Court that applies the *Iqbal/Twombly* standard in a challenge under *Gingles*, so *Broward* and *Snyder* are persuasive authority; (2) for obvious historical reasons, the Fifth Circuit and the Eleventh Circuit (where the *Broward* district court is located), rather than the Ninth Circuit, have been the venue of a substantial majority of case law under Section 2, giving cases from those Circuits particular persuasive heft; (3) there is no reason to disregard *Broward* simply because it is a district court opinion—district court opinions can obviously be well-reasoned too; and (4) for its part, *NAACP v. Snyder* is not a normal district court opinion. It is a decision of a special statutory three-judge court, required in "an action ... challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body," 28 U.S.C. § 2284(a), the opinions of which are appealable to the Supreme Court. 28 U.S.C. § 1253.

Plaintiffs also argue extensively that there is no "blanket numerical threshold" that constitutes cohesion. But a host of cases, cited in Defendants' moving papers hold otherwise. The cases on which Plaintiffs rely instead address the <u>third</u> *Gingles* precondition—the level of nonminority crossover voting that can defeat a claim of dilution. *See* discussion of *Ruiz, supra*; *United States v. Blaine County, Mont.*, 363 F.3d 897, 911 (9th Cir. 2004) ("[t]his contention flatly ignores the test laid out in *Gingles* for white bloc

voting."). In other words, Plaintiffs commit the very error that the three-judge court in *Cano v. Davis*, 211 F. Supp. 2d 1208, 1231 (C.D. Cal. 2002) (three-judge court), *aff'd*, 537 U.S. 1100 (2003), rejected: failing to treat the second and third *Gingles* preconditions as "distinct inquiries." *Id*. at 1238 n.34.

Ultimately, however, Plaintiffs' discussion of statistical methods of proving racially polarized voting is a red herring. Defendants have not contended that Plaintiffs must show—yet—that they support any candidate at a given statistical threshold. The point of Defendant's motion on the second *Gingles* precondition is that Plaintiffs fail to adequately allege "cohesion" of Latino voters. An allegation that Latino voters provided a higher rate of support for Latino candidates than non-Latino voters says nothing about Latino political cohesion. Latino voters could be splitting their votes, providing substantial support to several candidates with no clear choice of one over another, or supporting a non-Latino candidate more than the Latino candidate. Thus, Plaintiffs' conclusory allegation that "cohesion" exists, without facts to support that conclusion, is not "plausible." At a minimum, Plaintiffs must identify the elections in which cohesive voting by Latinos has taken place—the candidates and measures Latinos have cohesively supported and opposed.

## C.   Third *Gingles* Precondition: Plaintiffs' Allegations of White Bloc Voting That "Usually" Defeats Latino-Preferred Candidates Are Conclusory.

Plaintiffs' allegations regarding the third *Gingles* precondition—that that the majority votes "sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate"—are equally inadequate. *See, e.g., Broward*, 2012 U.S. Dist. LEXIS 46828, *23-*24 ("Plaintiffs allegation that "the non-Hispanic White population votes sufficiently as a bloc to usually defeat the Black and Hispanic electorate's preferred candidate" must be re-plead to allege more than this mere legal conclusion."). They have not identified <u>any</u> election in which Latinos purportedly supported a candidate cohesively but in which that candidate lost. For example, Plaintiffs allege that "Latino voters express their preference for Latino candidates in racially contested elections," *see* Complaint, ¶ 26, but—they have not pointed to any Latino candidate that has lost; they only cite the three

REPLY IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6)]
OF DEFENDANTS COUNTY OF KERN, *et al*.

CASE NO. 1:16-cv-00568-DAD-JLT
Page 13

1   Latino candidates that have been successful: Pete Parra, Michael Rubio and Leticia Perez.

2       Plaintiffs object that the success of Parra, Rubio and Perez cannot be counted against

3   them, because they ran in District 5, which is (now) majority Latino. (Whether that was the

4   case when Parra first won the seat in the mid-1990s may become an issue later.) But they

5   have not pointed to a single candidate from any other district that was cohesively supported

6   by Latinos but defeated by white bloc voting,[5] so there is no basis on which to infer that

7   Latino-supported candidates "usually" lose, other than Plaintiffs' naked assertion.

8   **V.    PLAINTIFFS' FAILURE TO PROVIDE NON-CONCLUSORY FACTUAL ALLEGATIONS REGARDING *ANY* OF THE "SENATE FACTORS" IS**

9   **FATAL TO THEIR CLAIM.**

10      Plaintiffs never dispute the fact that their allegations regarding the so-called "Senate

11  Factors" are conclusory and lack factual foundation. Instead, they contend that the defect is

12  immaterial, because "[t]he Ninth Circuit agrees that the presence of the other Senate factors

13  [besides factors 2 and 7, which summarize the *Gingles* preconditions] is supportive of a

14  challenge, but they are 'not essential to' a claim under Section 2." *See* Opp'n at 23 (quoting

15  *Blaine County*, 363 F.3d at 915).

16      Plaintiffs draw from the language in *Blaine County* a conclusion that is not

17  warranted. While "'there is no requirement that a particular number of factors be proved, or

18  that a majority of them point one way or the other[,]'" *id*. at 903 (quoting *Gingles*, 478 U.S.

19  at 45), it does not therefore follow that a plaintiff is entirely relieved of the need to plead

20  and prove *any* of those factors. After all the district court in *Blaine County* found that a

21  number of factors supported the plaintiffs (though it still found no vote dilution, a finding

22  the Ninth Circuit affirmed). *Id*. at 1049.

23      Plaintiffs' position contradicts the plain holding of the Supreme Court that "the three

24  *Gingles* factors may not be isolated as sufficient, standing alone, to prove dilution,"

25  especially "when the challenge goes to a series of single-member districts, where dilution

26

27      _____

28      **5** For example, do they contend that Latinos cohesively supported Steve Perez, who was the Supervisor in District 2 from 1995 to 2002?

may be more difficult to grasp." *Johnson v. De Grandy*, 512 U.S. 997, 1012 (1994); *see also Earl Old Person v. Brown*, 312 F.3d 1036, 1040-41 (9th Cir. 2002), *cert. denied*, 540 U.S. 1016 (2003) (under *De Grandy*, "the *Gingles* preconditions must not be viewed as sufficient alone to support a finding of dilution.").

Given the dearth of any non-conclusory allegations in the Complaint regarding the "Senate" or "totality" factors, Plaintiffs are left with nothing more than allegations (themselves conclusory, as discussed above) that the *Gingles* preconditions are met. Under *De Grandy*, that is not sufficient to state a claim for relief.

## VI.   DEFENDANTS DO NOT OPPOSE PLAINTIFFS' REQUEST TO AMEND.

Though Plaintiffs' request to file an amended complaint is perfunctory, Defendants are mindful of the fact that courts liberally permit amendment when plaintiffs have not previously filed an amended complaint. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (court's authority to dismiss with prejudice is "particularly broad" where "the plaintiff has previously filed an amended complaint..."). Accordingly, Defendants do not seek dismissal with prejudice yet. They simply seek what Rule 8 entitles them to—a complaint that consists of more than merely legal conclusions, conclusory allegations, and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 & 557).

## VII.   CONCLUSION.

Plaintiffs' Complaint amounts to nothing more than a bare-bones assertion of vote dilution, unsupported by any concrete factual allegations. This does not meet Plaintiffs' pleading burden under *Iqbal* and *Twombly*. Thus, the Complaint should be dismissed with leave to amend to try to state a claim.          Respectfully submitted,

Dated:  June 14, 2016                                   NIELSEN MERKSAMER
                                                       PARRINELLO GROSS & LEONI LLP

                                                  By:   /s/     Christopher E. Skinnell
                                                        Christopher E. Skinnell

                                                       *Attorneys for Defendants*
                                                       COUNTY OF KERN, *et al.*