UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR LUNA, ALICIA PUENTES, DOROTHY VELASQUEZ, and GARY RODRIGUEZ,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KERN; KERN COUNTY BOARD OF SUPERVISORS; MICK GLEASON, ZACK SCRIVNER, MIKE MAGGARD, DAVID COUCH, and LETICIA PEREZ, in their official capacities as members of the Kern County Board of Supervisors; JOHN NILON, in his official capacity as Kern County Administrative Officer; and MARY B. BEDARD, in her official capacity as Kern County Registrar of Voters,<br><br>Defendants. | No. 1:16-cv-00568-DAD-JLT<br><br>ORDER RE DEFENDANTS' MOTION IN LIMINE TO LIMIT OR EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. ALBERT CAMARILLO<br><br>(Doc. No. 99) |

On October 16, 2017, several pretrial motions in limine brought by the parties came on for hearing before the undersigned. Attorneys Denise Hulett and Tanya G. Pellegrini appeared on behalf of plaintiffs. Attorneys Marguerite Leoni and Christopher Skinnell appeared on behalf of defendants. After hearing oral argument the court denied the parties' motions in limine from the bench with the exception of the issue addressed by this order. (*See* Doc. No. 124.) Specifically, the court took under submission that aspect of defendants' motion to limit or exclude the

testimony of Dr. Albert Camarillo, one of plaintiffs' experts, with respect to the history of discrimination against Mexican Americans and other minorities in California and throughout the American West on the grounds that such testimony does not specifically relate to Kern County and will not aid the court in conducting what is an "intensely local appraisal" under the decision in *Thornburg v. Gingles*, 478 U.S. 30, 79 (1986). (Doc. Nos. 99-1 at 10-11; 117 at 7-12.) Having further considered the parties' arguments and the authorities cited in support thereof, defendants' motion in limine with respect to this aspect of Dr. Camarillo's testimony will be denied as well.

At the hearing defendants reiterated their contention that the decisions in *Gomez v. City of Watsonville*, 863 F.2d 1407 (9th Cir. 1988) and *NAACP v. City of Niagara Falls, N.Y.*, 913 F. Supp. 722 (W.D.N.Y. 1994), *aff'd sub nom., N.A.A.C.P., Inc. v. City of Niagara Falls, N.Y.*, 65 F.3d 1002 (2d Cir. 1995), support the granting of this aspect of their motion in limine. In *Gomez*, however, the Ninth Circuit stated as follows:

> [W]e nonetheless remain troubled by the court's handling of the first and fifth Senate factors. The district court apparently believed that it was required to consider only the existence and effects of discrimination committed by the City of Watsonville itself. This conclusion is incorrect.
>
> The first Senate factor requires consideration of "[t]he extent of any history of official discrimination *in the state* or political subdivision that touched the right of members of the minority group . . . to participate in the political process." S. Rep. No. 417 at 28, 1982 U.S. Code Cong. & Admin. News at 206 (emphasis added). Arguably, this limitation requires that one consider only electoral discrimination committed by the relevant political subdivision. Such a reading, however, would result in precisely the sort of mechanistic application of the Senate factors that the Senate Report emphatically rejects. The court is required to consider the totality of the circumstances, and given that the enumerated Senate factors are "neither comprehensive nor exclusive," Gingles, 478 U.S. at 45, 106 S. Ct. at 2764, *there is nothing to suggest that courts are forbidden to consider discrimination committed by parties other than the relevant political subdivision*. Thus, even if the first Senate factor does embrace only discrimination committed by Watsonville, that does not imply that the district court may not consider any relevant history or effects of discrimination committed by others, *such as* the state of California.
>
> Furthermore, such a restrictive reading places too much emphasis on the plaintiff's ability to prove intentional discrimination. Section 2 was amended by Congress precisely to relieve plaintiffs of the burden of showing such intent. While any intent to discriminate by Watsonville would indeed be supportive of the

2

plaintiffs' claim, plaintiffs need only show that, considering the totality of the circumstances, they do not have an equal opportunity to participate in the political process. There is no apparent reason why other forms of discrimination against Watsonville Hispanics may not be considered as factors that contribute to making the Watsonville at-large election scheme a device that impedes Hispanics' equal participation in the electoral process.

Lastly, the court decisions from which the Senate factors were derived . . ., both considered the existence of statewide discrimination as a factor in concluding that at-large elections in particular counties violated Section 2. *See White v. Regester*, 412 U.S. 755, 766–67, 93 S. Ct. 2332, 2339–40, 37 L.Ed.2d 314 (1973) (referring to statewide and countywide discrimination against blacks in Dallas County, Texas); id. at 767–68, 93 S. Ct. at 2340–41 (noting statewide discrimination against Mexican–Americans); *Zimmer v. McKeithen*, 485 F.2d 1297, 1306 (5th Cir.1973) (referring to the effect of statewide racial segregation in education).

These arguments apply with equal force to the fifth Senate factor, which states that courts may consider "the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment, and health, which hinder their ability to participate effectively in the political process." (emphasis added). Moreover, the literal language of the fifth Senate factor does not even support the reading that only discrimination by Watsonville may be considered; the limiting language describes the people discriminated against, not the discriminator.

The district court does not appear to have considered whether Watsonville Hispanics have suffered from discrimination by parties other than the City of Watsonville or whether any such discrimination has affected the ability of Hispanics to participate effectively in the city's electoral process. Thus, while the district court's interpretation of the first and fifth Senate factors rested on an erroneous view of the law, the appellants did not present, and the record does not contain, sufficient evidence of historical discrimination against Hispanics to permit this court to find that Watsonville Hispanics have suffered from such discrimination.

Were it necessary to decide this issue, we would consider the propriety of taking judicial notice of the pervasive discrimination against Hispanics *in California, including discrimination, committed by the state government*, that has touched the ability of California Hispanics to participate in the electoral process. *See, e.g., Castro v. State*, 2 Cal.3d 223, 231, 466 P.2d 244, 249, 85 Cal. Rptr. 20, 25 (1970) (declaring a California constitutional provision making the ability to read English a prerequisite for voting unconstitutional as applied to those literate in another language). However, we conclude that, even without such a showing, plaintiffs have clearly established a violation of Section 2.

863 F.2d at 1418-19 (emphasis added); *see also City of Niagara Falls*, 913 F. Supp. at 742-44

(reflecting that admissibility of evidence regarding the history of official discrimination against African Americans "in New York State or any of its subordinate jurisdictions" to supplement "evidence specific to a given polity," with the district court ultimately affording little weight to such evidence in light of the absence of evidence of historical discrimination touching on the voting rights of African Americans in Niagara Falls).

Thus, the cases relied upon by defendants do not support the exclusion of Dr. Camarillo's testimony from evidence. Moreover, they do not support the distinction drawn by defendants at argument on the pending motion that only evidence of past discrimination **by** the state as opposed to **within** the state is admissible in a case such as this one. Rather, defendants' objections to Dr. Camarillo's testimony go solely to the weight that testimony should be afforded by the court. Accordingly, defendant's motion in limine to exclude Dr. Camarillo's testimony (Doc. No. 99) is now denied in its entirety.

IT IS SO ORDERED.

Dated: **October 19, 2017**

UNITED STATES DISTRICT JUDGE